# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| KECIA R. JASPER, | : Case No. 3:20-cv-103 |
|  Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| vs. | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
|  Defendant. | : |

# DECISION AND ENTRY

## I. INTRODUCTION

Plaintiff Kecia R. Jasper brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. Her applications, filed in May 2016, were denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on October 15, 2018 before Administrative Law Judge (ALJ) Stuart Adkins. Plaintiff was not present for the hearing. ALJ Adkins concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff presently seeks a remand for further proceedings. The Commissioner asks the Court to affirm the ALJ's non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 13), and the administrative record (Doc. No. 9).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since June 6, 2012. At that time, Plaintiff was thirty-seven years old. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[1] She has at least a high school education.

The evidence of record related to Plaintiff's impairments is sufficiently summarized in the ALJ's decision (Doc. No. 9-2, PageID 67-83), Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 13). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.     THE ALJ'S DECISION

As noted previously, it fell to ALJ Adkins to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1:   Plaintiff has not engaged in substantial gainful employment since June 6, 2012, the alleged onset date.

Step 2:   She has the severe impairments of degenerative disc disease (DDD) of the lumbar spine, anxiety, depression, migraines, rheumatoid arthritis (RA), lymphocytosis, osteoarthritis (OA), obesity, and hepatic steatosis.

Step 3:   She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work" subject to the following limitations: "can lift and/or carry 20 pounds occasionally and ten pounds frequently, she can stand and/or walk for about four hours and

>           sit for about six hours in an eight-hour workday, would be permitted to alternate between sitting and standing every fifteen minutes while at the workstation. She can occasionally push and/or pull with the lower extremities, but can never climb ladders [*sic*] ropes and scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but should avoid concentrated exposure to extreme cold and should avoid all exposure to unprotected heights, dangerous machinery and commercial driving. She can perform simple routine tasks but not at a production rate pace or with strict production quotas and can tolerate occasional changes to a routine work setting defined as 1-2 per week."

> Step 4:     She is unable to perform her past relevant work.

> Step 5:     Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 9-2, PageID 70-83). Based on these findings, the ALJ ultimately concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 83.

## V. DISCUSSION

The present case centers around Plaintiff's absence from her administrative hearing. Plaintiff contends that she established good cause for failing to appear for her scheduled hearing, and that the determination otherwise was in error. She requests that her claim be remanded so that she has an opportunity to testify as to her severe impairments.

HALLEX I-2-4-25(D)(2) provides that "[i]f an appointed representative appears at the scheduled hearing without the claimant and continues to represent the claimant during the hearing, dismissal is never appropriate." HALLEX I-2-4-24(D)(2) (S.S.A.), 1993 WL 643012, at *5-6. As to constructive waiver of the right to appear:

> If the ALJ finds that the claimant has not constructively waived the right to appear at the hearing, the ALJ may choose to proceed with the hearing, accepting the testimony of the witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf. The ALJ will advise the appointed representative that a Request to Show Cause for Failure to Appear will be sent to the claimant to ask why he or she did not appear at the scheduled hearing and whether a supplemental hearing should be held. After the 10-day response period expires (with an additional five days for mailing time), the ALJ will either:
>
>> Determine that the claimant has constructively waived his or her right to appear for a hearing (if the claimant fails to respond to the Request to Show Cause for Failure to Appear or fails to show good cause for failure to appear at the scheduled hearing), and issue a decision based on the evidence of record; or
>>
>> Offer the claimant a supplemental hearing to provide testimony if the claimant establishes good cause for failure to appear at the scheduled hearing.

*Id.* at \*6. In this case, there was initially no constructive waiver at the hearing. As a result, the inquiry turned to whether Plaintiff had good cause for her absence.

Good cause, defined as "a reasonable explanation for failing to comply with a requirement," is based on the circumstances of each case. *See* HALLEX I-2-4-25(B). In evaluating good cause, the ALJ "must consider any physical, mental, educational, or linguistic limitations that may have prevented the claimant from appearing at the scheduled time and place of the hearing, akin to the requirements for consideration of good cause for late filing in 20 CFR 404.911 and 416.1411 and Social Security Ruling 91-5p." *Id.*

In the present case, Plaintiff explained that she failed to make a timely appearance at her hearing because she "unfortunately got lost driving to the hearing." (Doc. No. 9-4,

6

PageID 256). She further wrote that she does not "drive that much in Springfield and/or Dayton so [she] got turned around and confused with [her] directions." *Id.* This did not rise to the level of good cause according to the ALJ:

> [Plaintiff] completed the Request to Show Cause for Failure to Appear form and stated that she arrived late to her hearing because she had "got turned around and confused" with her directions. She asserted that she did not drive in Dayton and Springfield much and that she was signed in for her hearing at 10:15 a.m. (B17B).
>
> [Her] hearing was scheduled to begin at 10:00 a.m. and within the Notice of Hearing, [Plaintiff] was instructed to arrive at least 30 minutes prior to her hearing (B12B). Her representative was present for the hearing and the hearing did not begin until 10:05 a.m. because [Plaintiff's] representative asserted that he had not heard from her. [She] lives in Springfield, Ohio, which is, if driven, approximately 45 minutes away from the hearing office. Assuming that [she] allotted enough time to appear 30 minutes prior to her hearing, based upon her written statement, it appears that she was lost for approximately 45 minutes.
>
> Accordingly, the undersigned finds that [Plaintiff] has not established a good reason for failure to appear at the scheduled hearing and that she has constructively waived her right to appear at the hearing. Therefore, the undersigned has decided the case on the existing record.

(Doc. No. 9-2, PageID 68).

This determination is supported by substantial evidence, and no abuse of discretion occurred in this instance. As reflected above, Plaintiff indicated that she was absent from her hearing because she got lost. She did state that she got confused by her directions, but by her explanation, this confusion was attributable to infrequent driving in an area that was unfamiliar to her. Plaintiff, in responding to the Request to Show Cause for Failure to

7

Appear, did not attempt to link getting lost and her related confusion with directions, to any of her severe mental impairments. However, she now asserts that her reasoning is justifiable because of her severe mental impairments that affect her ability to respond to pressure and/or stress, and concentrate. (Doc. No. 10, PageID 1901). She argues that these factors should have been specifically addressed when assessing good cause.

The undersigned disagrees. This case is analogous to *Neuzil v. Astrue*, No. 2:12-cv-34, 2013 WL 2445212 (M.D. Tenn. June 5, 2013). In that case, the court found that copying down the address wrong and getting lost did not constitute good cause. *Id.* at *6; *see also Young v. Astrue*, No. 09-1496, 2010 WL 2891501 (W.D. Penn July 21, 2010) (finding that faulty directions and an inability to locate the hearing office was not good cause). More specifically, the court in *Neuzil* explained that "there was nothing in [the plaintiff's] written explanation to counsel that would suggest any physical, mental, educational, or linguistic limitations caused to her to miss the hearing." *Id.* The same is true here. The explanation in the present case did not suggest that Plaintiff's severe mental limitations—i.e., anxiety and depression—caused her to get lost and miss her hearing.

Even though there are no set criteria for establishing good cause, Plaintiff's explanation does not meet any of the circumstances set forth in HALLEX I-2-4-25(C)(1). There are three circumstances under which good cause generally exists. These include (1) no proper notification of the scheduled hearing, (2) an unforeseeable event, and (3) withdrawal of representation without sufficient notice. HALLEX I-2-4-25(C)(1), 1993

8

WL 643012, at *3. Her explanation also does not meet any of the examples set forth in 20 C.F.R. §§ 404.911 and 416.1411 that include for instance, serious illness, or death or serious illness of an immediate family member. *See* 20 C.F.R. §§ 404.911 and 416.1411.

In addition, to the extent that Plaintiff contends a more robust analysis was required, this too is unpersuasive. A court in this district previously explained that extensive analysis in this circumstance is not required:

> [N]othing in HALLEX Subsection I-2-4-25(D)(2)(b) imposes such a heightened articulation requirement. Significantly, *none* of the examples offered in either HALLEX or the regulations HALLEX references mandate or even suggest a different conclusion. Rather, the offered examples focus on whether the claimant had notice, was able to understand the notice, and was able to attend the hearing.

*Stires v. Comm'r of Soc. Sec.*, No. 2:17-cv-811, 2018 WL 3237673, at *6 (S.D. Ohio July 3, 2018) (Vascura, M.J.), report and recommendation adopted, 2018 WL 4203451, at *1 (S.D. Ohio Sept. 4, 2018) (Graham, D.J.) (citing HALLEX Subsection I-2-4-25(C); 20 C.F.R. §§ 404.911 and 416.1411)) (other citations omitted) (emphasis in original).

Plaintiff heavily focuses on the ALJ's emphasis on the fact that she was recommended to arrive 30 minutes before the scheduled hearing, and that such emphasis significantly impacted the good cause analysis. (Doc. No. 10, PageID 1900). The undersigned disagrees. There is no question that Plaintiff missed her hearing. And this is not a situation where the hearing started early. In fact, the hearing began 5 minutes after the scheduled time because Plaintiff's representative had not heard from her. (Doc. No. 9-

2, PageID 68). Therefore, while it may have been unnecessary for the ALJ to point out that Plaintiff was recommended to arrive early, the undersigned is not convinced that this ultimately led him to conclude that Plaintiff did not establish good cause.

Furthermore, Plaintiff has not demonstrated that she was prejudiced by her inability to testify as to her impairments and related symptoms. *See generally Stires*, 2018 WL 3237673, at *7 ("Even if the ALJ had failed to comply with HALLEX procedures, remand would not be automatic because HALLEX is not binding on this Court and Plaintiff has failed to sufficiently articulate prejudice attributable to any such noncompliance."). While she asserts that her pain and mental health struggles "were so central to her allegations of disability," Plaintiff does not explain how her testimony would have impacted the decision. Despite her absence from the hearing, the ALJ nevertheless discussed Plaintiff's reported functional limitations and day-to-day activities. For example, he discussed that she lives in an apartment and is highly dependent on her children. *Id.* at 75. She indicated she can only sit, stand and walk for 20-30 minutes at a time, and needs assistance with grooming, hygiene and housework. *Id.* She reported being able to make simple meals (i.e., sandwiches, premade meals), fold laundry, organize bills, and write shopping lists. *Id.* Her children do most of the shopping due to her physical pain symptoms. *Id.* at 72. Likewise, he recognized that she can drive herself and perform household chores as necessary. *Id.* at 75. Plaintiff can use the computer and the internet, and she regularly reads newspapers. *Id.* at 71. She does not regularly attend community events or socialize with friends. *Id.* at

10

72. Plaintiff does not assert that the descriptions of her day-to-day activities, or that the impact her symptoms had on her functional abilities, is inaccurate or incomplete.

For the reasons set forth above, the undersigned finds that substantial evidence supports the determination that Plaintiff did not establish good cause. The undersigned has not identified any abuse of discretion. Plaintiff and her representative received proper notice of the hearing, and her representative continued with the hearing on her behalf. *See Young*, 2010 WL 2891501, at *2 ("Indeed, establishing good cause for failing to attend a scheduled hearing largely revolves around whether the claimant or the claimant's representative received proper notification of the hearing or was otherwise prevented from attending the hearing."). Therefore, Plaintiff's Statement of Errors is not well-taken.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability determination be **AFFIRMED**; and

2. The case be terminated on the docket of this Court.

August 31, 2021                                         *s/Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge